**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

| | |
|---|---|
| **Hon. Michael B. Kaplan** | 609-989-0478 |
| United States Bankruptcy Judge | 609-989-2259 Fax |

October 11, 2011

Michael W. Hoffman, Esq.
Lanciano & Associates, LLC
2 Route 31 North
Pennington, NJ 08534
Attorney for the Defendant, William Barish

Theodore Liscinski, Jr., Esq.
Ted Liscinski Jr., LLC
265 Davidson Avenue, Suite 200
Somerset, New Jersey 08873
Attorney for Trustee/Plaintiff

          Re: In re Trades Publishing Inc. (Chapter 7)
             Case No. 10-21483 (MBK)
             Adv. Proc. No. 10-2531 (MBK)

Counsel:

  This matter comes before the Court upon the motion (the "Motion") of William Barish (the "Defendant" or "Defendant Barish") for summary judgment seeking to dismiss the claims against him, specifically the Ninth (Fraudulent Conveyance) and Tenth (Preference) Counts of the Adversary Complaint filed by the Chapter 7 Trustee, Theodore Liscinski, Jr. (the "Trustee"). The Court has reviewed the pleadings submitted and heard oral argument on September 6, 2011. The Court issues the following ruling:

**I. PROCEDURAL HISTORY/FACTS**

Debtor Trades Publishing, Inc. (the "Debtor" or "Debtor Corporation") filed the within Chapter 7 bankruptcy petition on April 19, 2010. The subject Adversary Complaint was filed on November 24, 2010. The Defendant filed his answer on January 7, 2011. Debtor is a New Jersey Corporation with its principal place of business in Lambertville, NJ. The Chapter 7 Trustee was subsequently appointed on April 19, 2010.

The Debtor Corporation began to encounter financial difficulties during the course of its operations and entered into a commercial transaction with WEB Equities, LLC (the "Lender" or "WEB Equities"). Defendant, the sole member of WEB Equities, formed the LLC on January 2, 2008, for the purpose of loaning money to the Debtor and other borrowers. By way of a check from Defendant Barish's personal checking account, WEB Equities loaned $250,000 (the "First Note") to the Debtor. A commercial note and accompanying security agreement was executed by the Debtor on the same date.

The Security Agreement contained an escrow agreement between the Debtor Corporation and WEB Equities, and a stock pledge agreement whereunder the Debtor Corporation agreed to give WEB Equities 120 shares of non-dilutable capital stock, which constituted 12% of non-dilutable authorized capital stock of the Debtor Corporation. In conjunction with the Security Agreement, the principals of the Debtor Corporation personally guaranteed the loan and executed mortgages on their homes in favor of WEB Equities as further security.

On May 21, 2009, the Debtor defaulted on the First Note. In an effort to supplement the financing given to the Debtor, the Defendant Barish, through WEB Equities, advanced the Debtor Corporation an additional $92,000 (the "Second Note"). As such, on July 31, 2009, Defendant Barish wrote the Debtor Corporation a check from his personal checking account for

$92,000 on behalf of WEB Equities. The Second Note was memorialized by the execution of a Short Term Note on that same date by the Debtor Corporation, which reaffirmed its obligations and the second priority security interest under the First Note. Additionally, due to the fact that the Debtor Corporation paid down the First Note to $203,509, WEB Equities subsequently amended and reinstated the First Note in July of 2009 to evidence the adjusted amount in arrears.

In consideration for the Second Note and for otherwise forbearing enforcement of the First Note, the Debtor Corporation gave further security in its assets to WEB Equities, granting it an additional 8% of the non-dilutable, authorized capital stock, giving WEB Equities a combined 20% interest in the Debtor Corporation. This transaction was specifically referred to in the books and records of the Debtor Corporation as "Lenders Interest." Both the First and Second Notes contain cross-collateral and cross-default terms whereby a default under either Note constituted a default under the other. Debtor's business continued to fail, and as a result, Debtor Corporation defaulted on the Second Note on October 31, 2009, having only made a total of $49,977.56 in payments between August 31, 2009 and November 7, 2009. The Debtor Corporation also failed to make any payments on the Amended First Note.

Subsequently, within a year before the filing of Bankrupt Petition, the Debtor Corporation made payment on account of the Notes in excess of $61,600.31 to Defendant Barish. At the time this transfer was made, the Debtor Corporation had outstanding debts in excess of $600,000 to other creditors. The Trustee now brings this action to avoid this transfer because the Debtor Corporation made payments to Defendant Barish, individually, instead of directing payment to WEB Equities, the holder of the Notes.

Among the claims in the Adversary Complaint, the Trustee has brought two separate claims, in the alternative, in connection with the payment by the Debtor Corporation to the

Defendant. First, the Trustee argues that the subject payments made to Defendant Barish are avoidable as a preferential transfer under 11 U.S.C. section 547. Alternatively, the Trustee maintains that the payments made by the Debtor Corporation to Defendant Barish were fraudulent transfers under 11 U.S.C. section 548 and N.J.S.A. section 25:2-20, and are avoidable pursuant to 11 U.S.C. section 544(b). Contrary to the Trustee's position, Defendant Barish moves before this Court by way of summary judgment to dismiss the Ninth and Tenth Counts of the Adversary Complaint.

Oral argument on the motions was held on September 6, 2011. At the conclusion of the hearing, the Court announced it would reserve its decision to further consider the issues. After reviewing the parties' submissions and applicable law, the Court is prepared to rule.

## II. JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. sections 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. sections 157(b)(2)(F),(H). Venue is proper in this Court pursuant to 28 U.S.C. sections 1408 and 1409. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[1] As the

---

[1] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. As noted by the court in Guiliano v. Coy (In re Coy):

Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine dispute for trial. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp., 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the party must support its motion with credible evidence - using any of the materials specified in Rule 56(c) - that would entitle it to a directed verdict if not controverted at trial. Celotex Corp., 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine

---

Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 Bankr. LEXIS 3196, *6-7 (Bankr. D. Del. Aug. 22, 2011).

[dispute]" for trial or to request additional time for discovery under Fed. R. Civ. P. 56(f). Fed. R. Civ. P. 56(e).

Once the moving party establishes the absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. Id. at 249.

    **B. Summary Judgment Analysis as to the Tenth and Ninth Counts of the Adversary Complaint**

        **1. Count Ten – Whether Debtor Corporation's payment to Defendant Barish is an avoidable preference because Defendant Barish and/or WEB Equities' is a statutory or non-statutory insider under 11 U.S.C. § 547(b)(4)(B).**

The Trustee contends under the Tenth Count of the Adversary Complaint that the Debtor Corporation's payment to the Defendant is an avoidable preferences under section 547(b) because the transfer was made while the Debtor Corporation was insolvent, within the applicable look-back period (one year) to an insider-creditor, on account of an antecedent debt, thus enabling the creditor to receive more than the creditor would have received in a liquidation under Chapter 7. The Trustee points out the obvious---the transfer was made in preference to all other unsecured creditors for the sole purpose of satisfying the personal obligations of the Debtor Corporation's officers and managers.

Under section 547, a trustee or the debtor-in-possession can dismantle select transactions between a debtor and its creditors that occurred within the ninety (90) days [or a year if the creditor is an "insider"] immediately preceding the bankruptcy filing. Barnhill v. Johnson, 503 U.S. 393, 394 (U.S. 1992); see also 11 U.S.C. § 110; see also Rzasa-Ormes v. Arturi, D'Argenio, Guaglardi & Meliti, LLP, 2010 Bankr. LEXIS 3747, 9-11 (Bankr. D.N.J. Oct. 25, 2010). If the bankruptcy court declares that an avoidable preference has occurred, the creditor must forfeit its improved position and must return any preferential transfers it received. Johnson, 503 U.S. at 394. Section 547(b) explains the elements of a preferential transfer:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property . . .
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made . . .
>     (A) on or within 90 days before the filing of the petition; or
>     (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if . . .
>     (A) the case were a case under Chapter 7 of this title
>     (B) the transfer had not been made; and

      (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Section 547's avoidance power aims "to foster equality of treatment among creditors and to discourage creditors from incapacitating a firm by racing to attach its assets shortly before bankruptcy." <u>Pineview Care Ctr. v. Mappa (In re Pineview Care Ctr.)</u>, 152 B.R. 703, 705 (D.N.J. 1993); <u>see</u> also <u>MR Wind Down Co. v. Rock-Tenn Converting Co. (In re Markson Rosenthal & Co.)</u>, 2009 Bankr. LEXIS 3901 (Bankr. D.N.J. Oct. 27, 2009).  In a preference action, section 547(b) places the burden of proof on the trustee or the debtor-in-possession to establish the avoidability of a transfer by a preponderance of the evidence. <u>See</u> 11 U.S.C. § 547(g).

In this case, Debtor Corporation's $61,600.31 transfer was for the benefit of Defendant and was on account of an antecedent debt owed by the Debtor Corporation i.e. the First and Second Notes. <u>See</u> 11 U.S.C. § 547(b)(1) & (2).  Further, the facts indicate that the subject payment was made while the Debtor Corporation was insolvent. <u>See</u> § 547(b)(3).  The transfer to the Defendant, however, occurred one year before the filing of this petition, thereby rendering section 547(b)(4)(A) inapplicable to this proceeding.  Therefore, to succeed on the Tenth Count of the Adversary Complaint, the Trustee must demonstrate either that (1) that Defendant Barish is an "insider" with reference to the Debtor Corporation; or (2) that WEB Equities is an insider by virtue of being an affiliate of the Debtor Corporation and that Defendant Barish and WEB Equities are alter egos of each other.

Defendant is deemed an insider under 11 U.S.C. section 101(31) if he is a:

(i) director of the debtor;
(ii) officer of the debtor;
(iii) person in control of the debtor;
(iv) partnership in which the debtor is a general partner;
(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor.

11 U.S.C. § 101(31)(B). Additionally, subsection (E) of section 101(31) provides that the Defendant can attain the status of an insider if found to be an "affiliate, or insider of an affiliate as if such affiliate were the debtor." § 101(31)(E). The task of proving "control" does not necessarily apply to the Court's endeavor in classifying whether a party is a statutory insider, as the categorization itself can be rather broad. In re Bayonne Med. Ctr., 429 B.R. at 175. For instance, the definition of a statutory insider encompasses both an affiliate of the debtor, and "an insider of an affiliate as if such affiliate were the debtor." 429 B.R. at 175 (citing 11 U.S.C. § 101(31)(E)). To be considered an affiliate, and by way of extension an insider of the Debtor, an entity need only hold as little as a twenty-percent block of a debtor's voting securities per section 101(2)(A). Id. (citing See § 101(31)(E) in combination with §101(31)(B)(i)). In any case where it is established that a party is a statutory insider, a nonrebuttable presumption arises "of some degree of influence or consideration which generates the expanded preference period and scrutiny." Id. If determined to be a statutory insider, the subject party would be exposed to a one year reach-back period rather than the usual 90 days. 11 U.S.C. § 547(b)(4)(B).

It is undisputed that neither Defendant Barish nor WEB Equities is a director of the debtor, officer of the debtor, a partnership in which the debtor is a general partner, a general partner of the debtor, or a relative of a general partner, director, officer, or a person in control of the debtor. However, WEB Equities, by way of its acquisition of a 20% equity stake in the Debtor Corporation, became a statutory affiliate of the Debtor Corporation under section 101(31)(E) and in turn, a statutory insider under the Code. The question remains whether Defendant Barish is an insider under the Code.

One accepted theory to consider is whether Defendant Barish fits into the category of a nonstatutory insider. Wilen v. Pamparo Sav. Bank, S.L.A. (In re Bayonne Med. Ctr.), 429 B.R. 152, 175 (Bankr. D.N.J. 2010) ("A nonstatutory insider apparently is not "a person in control of the debtor", a listed statutory category"). The evaluation of whether a party is a non-statutory insider for preference purposes requires the Court to examine "(i) factual contexts centered on analogs to Code-listed types; or (ii) influence short of control (would be "undue influence") or arm's lengthedness (or lack of it) in dealing with the debtor." Wilen v. Pamparo Sav. Bank, S.L.A. (In re Bayonne Med. Ctr.), 429 B.R. 152, 175 (Bankr. D.N.J. 2010); see also Shubert v. Lucent Techs. Inc (In re Winstar Communs., Inc.), 554 F.3d 382, 395 (3d Cir. Del. 2009) ("it is not necessary that a non-statutory insider have actual control; rather, the question "is whether there is a close relationship [between debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length." 554 F.3d at 396-97 (citing In re U.S. Med., 531 F.3d at 1277 and S.Rep. No. 95-989, at 25 (1978)). However, there is no "per se" rule that requires that "[]any transaction[] not at arm's length (along with affinity), renders the creditor an insider for the challenged transaction." In re Bayonne Med. Ctr., 429 B.R. at 175.

Fortunately, the Court need not even delve into such a fact sensitive analysis. By way of WEB Equities' 20% non dilutable equity ownership in the Debtor Corporation, the Defendant, as the sole member of WEB Equities, satisfies the requirements of being a statutory insider under 11 U.S.C. § 101(31)(E)) by being "an insider of an affiliate." See 429 B.R. at 175 (citing 11 U.S.C. § 101(31)(E)). In the alternative, if the Court were to accept the parties' contention[2] that WEB Equities and Defendant Barish are alter egos of each other, WEB Equities/Defendant

---

[2] At oral argument on this matter, Counsel for both parties posited that Defendant Barish and WEB Equities should be regarded by the Court as being one in the same.

10

Barish would still be considered a statutory insider because of WEB Equities affiliate status as a 20% equity holder in the Debtor Corporation.

Treating the Defendant Barish and WEB Equities as a single entity offers a limited benefit to the Trustee by extending the look-back period from ninety days to one year. See 11 U.S.C. § 547(b)(4)(B). Whether or not WEB Equities and Defendant Barish are the same legal entity, the Trustee must still establish that the transfer was a repayment on an antecedent debt and that the transfer enabled Defendant Barish individually or Defendant Barish/WEB Equities jointly to obtain a return greater than available in a liquidation under Chapter 7. Accepting that the Defendant is a statutory insider under either argument, the Court remains, however, unpersuaded that the Defendant received a preferential payment. Simply put, if Defendant Barish and WEB Equities are not treated as alter egos, then the repayment was not made on account of an antecedent debt (Defendant Barish was not the payee on either of the Notes). If Defendant Barish and WEB Equities are alter egos, then the Defendant must be treated as a secured creditor. The principal repayments were made pursuant to the terms and conditions of the **secured** First and Second Note. Consequently, Defendant Barish, as a secured creditor, did not receive more than he would have in a hypothetical Chapter 7 as contemplated under 11 U.S.C. section 547(b). See Pineview Care Ctr. v. Mappa (In re Pineview Care Ctr.), 152 B.R. 703, 706 (D.N.J. 1993) (Court held that a secured creditor cannot be a recipient of a preferential payment: "[u]nder § 547(b)(5) a transfer is avoidable only if it enables a creditor to receive more than such creditor would receive under a Chapter 7 liquidation. A fully secured creditor is paid in full under Chapter 7" (citing See § 506)).

Accordingly, the Court hereby dismisses the Tenth Count of the Adversary Complaint, with prejudice, by way of summary judgment for the Trustee's failure to carry its burden of

11

establishing the avoidability of the Debtor Corporation's transfer of $61,600.31 to Defendant Barish under section 547(b).

> **2. Count Nine - Whether the Debtor Corporation's transfer of $61,600.31 to Defendant Barish constituted a fraudulent transfer under either 11 U.S.C. § 548 or New Jersey State Law.**

The Ninth Count of the Adversary Complaint against Defendant Barish alleges that the payment of funds at issue by the Debtor Corporation constituted a fraudulent transfer under both 11 U.S.C. section 548 and New Jersey State Law. Defendant argues that the Trustee's fraudulent conveyance claims must fail because the Debtor Corporation received reasonably equivalent value in exchange for the loan repayment monies tendered to Defendant on behalf of WEB Equities.

Section 548 of the Bankruptcy Code describes the powers of a Trustee in bankruptcy to avoid fraudulent transfers. The provision grants the Trustee the authority to set aside not only transfers permeated by actual fraud, but also certain other constructively fraudulent transfers within two years before the date of the filing of the petition. Forman v. Jeffrey Matthews Fin. Group, LLC (In re Halpert & Co.), 254 B.R. 104, 114-115 (Bankr. D.N.J. 1999) (citing Bfp v. Resolution Trust Corp., 511 U.S. 531, 535 (U.S. 1994)); see also 11 U.S.C. § 548(a)(1)(B)(i)-(ii). To avoid any such transfer the Trustee can establish "(1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received "less than a reasonably equivalent value in exchange for such transfer."" In re Halpert & Co.), 254 B.R. at 114-15 (citing Bfp, 511 U.S. at 535 (citing 11 U.S.C. § 548(a)(2)(A))).

Similarly, under the New Jersey's Uniform Fraudulent Transfer Act, N.J.S.A. section 25:2-25:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> b. Without receiving a **reasonably equivalent value** in exchange for the transfer or obligation, and the debtor:
>
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. § 25:2-25 (emphasis added). Whether the Debtor Corporation received reasonably equivalent value in exchange for its payment to the Defendant is the only element that is in question before this court in regards to the factors listed under both 11 U.S.C. section 548(a)(2)(A) and N.J.S.A. section 25:2-25.

For the purposes of a fraudulent transfer, value is defined under section 548 as "property, or satisfaction or securing of a . . . debt of the debtor." 511 U.S. at 535-36 (citing 11 U.S.C. § 548(d)(2)(A)). "[R]easonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'" Litig. Trust of MDIP Inc. v. De La Rue Cash Sys., Inc. (In re MDIP Inc. f/k/a Mosler, Inc.), 332 B.R. 129, 133 (Bankr. D. Del. 2005) (citing VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007)). Quantifying "reasonably equivalent value" requires focusing on the totality of the circumstances. MDIP, 332 B.R. at 133 & n.2. Accordingly, "[r]easonably equivalent value" is largely a factual question. Id. at 133 (citing 5 Collier on Bankruptcy P 548.05 (15th ed. rev.

2005) ("Whether the transfer is for a reasonably equivalent value in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of facts.")); see also MRWind Down Co. v. Rock-Tenn Converting Co. (In re Markson Rosenthal & Co.), 2009 Bankr. LEXIS 3901, 28-29 (Bankr. D.N.J. Oct. 27, 2009).

Under 11 U.S.C. section 550(a)(1), the Trustee is entitled to recover "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property," attributable to a transfer avoided under section 548 from the entity for whose benefit the avoided transfer was made. See 11 U.S.C. § 550(a)(1); see also In re Halpert & Co., 254 B.R. at 116. "[A] party must receive either property or a benefit from the transfer to be held liable under Section 550." Halpert, 254 B.R. at 116 (citing See 11 U.S.C. § 550(a)(1)). Under Section 548(a)(1), "the party alleging a fraudulent transfer bears the burden of proving that the debtor did not receive reasonably equivalent value in exchange for the property transferred and obligations incurred." 3V Capital Master Fund Ltd. v. Official Comm. of Unsecured Creditors of Tousa, Inc. (In re Tousa, Inc.), 444 B.R. 613, 649-650 (S.D. Fla. 2011) (citing See In re Chase & Sanborn Corp., 904 F.2d at 593-94 ("The burden of proving lack of 'reasonably equivalent value' under 11 U.S.C.A. § 548(a)(2)(A) rests on the trustee challenging the transfer.")). The Court must analyze reasonably equivalent value in terms of the value of the debtor's interest in the property conveyed. In re Tousa, Inc., 444 B.R. 613, 651-52 (citing See Kittay v. Peter D. Leibowits Co., Inc. (In re Duke & Benedict, Inc.), 265 B.R. 524, 531 (Bankr. S.D.N.Y. 2001) (Court indicating that the proper inquiry for analyzing reasonably equivalent value is not "the value of the property that was conveyed, but the value of the debtor's interest in the property conveyed.")).

Before determining whether a debtor received "reasonably equivalent value," a court must first look at what "value," if any, the debtor received in return for the transfer. Mellon

14

Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.), 92 F.3d 139, 149 (3d Cir. 1996) ("[B]efore determining whether the value was 'reasonably equivalent' to what the debtor gave up, the court must make an express factual determination as to whether the debtor received any value at all."). Once this determination is made, the Court must then determine the scope and meaning of "reasonably equivalent value" as applied to the case before it.

For the purposes of analyzing the Trustee's fraudulent transfer claim, the Court's determination as to whether the conveyance can be avoided hinges on a factual finding concerning the legal status of Defendant Barish. In other words, a finding that Defendant Barish is not the alter ego of WEB Equities would result in the Debtor Corporation having paid the Defendant $61,600.31 without having received reasonably equivalent value, because only WEB Equities can confer a direct benefit onto the Debtor Corporation as the holder of the Notes. Moreover, the burden of proof would then shift to the Defendant to establish that his receipt of the $61,600.31 indirectly benefited the Debtor Corporation on account of relieving part of the Debtor Corporation's obligations to WEB Equities under the First and Second Notes. Conversely, if the Court were to instead accept the representation of the Trustee and Defendant's counsel that WEB Equities and Defendant Barish are one in the same, the Trustee's fraudulent transfer claim would ultimately fail if proven that the Debtor Corporation received a direct benefit in the form of partial satisfaction of the secured claim in exchange for the payment of $61,600.31 to Defendant Barish/Web Equities.

Ordinarily, such an analysis would involve detailed fact-finding, and as a result, cannot result in the disposition of the Trustee's fraudulent conveyance claim by means of summary judgment in this case. See Ragan v. Tri-County Excavating, 62 F.3d 501, 516 (3d Cir. 1995)

15

("[a] finding of an alter ego situation is a factual one and must be supported by the record" (citing Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc., 727 F.2d 279, 283 (3d Cir. 1983) (citation omitted)). "[B]oth Pennsylvania and New Jersey require a threshold showing that the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons." Ragan, 62 F.3d at 516 (citing Culbreth v. Amosa Ltd., 898 F.2d 13, 14-15 (3d Cir. 1990) (per curiam); see also Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988))). As will be discussed, each party's ability to prevail rests upon whether there is a finding that the Defendant Barish and WEB Equities are alter egos of one another.

The "identity of interest rule" recognizes that "if the debtor and the third party are so related or situated that they share an 'identity of interests,'" then "what benefits one will, in such case, benefit the other to some degree." Garrett v. Falkner (In re Royal Crown Bottlers, Inc.), 23 B.R. 28, 30 (Bankr. N.D. Ala. 1982). See In re R.M.L., Inc., 92 F.3d at 148 ("[t]he mere 'opportunity' to receive an economic benefit in the future constitutes 'value' under the Code."). The absence of a concrete definition has challenged courts in cases concerning indirect or intangible benefits, whereas here, the Debtor Corporation transferred to Defendant Barish funds in exchange for partial satisfaction of the outstanding Notes. see In re Tousa, Inc., 444 B.R. 613, 655-56 (citing See generally In re Young, 82 F.3d 1407 (8th Cir. 1996) (whether debtors received "value" in exchange for charitable contributions to church); In re Chomakos, 69 F.3d 769 (6th Cir. 1995) (whether debtors obtained "value" in exchange for $7,710 in gambling losses), cert. denied, 517 U.S. 1168, 116 S. Ct. 1568, 134 L. Ed. 2d 667 (1996); In re Morris Comm'ns NC, Inc., 914 F.2d at 458 (what the "value" of shares in corporation were whose only asset was a license application pending before the FCC that had a one in twenty-two chance of

approval); In re Fairchild Aircraft Corp., 6 F.3d 1119, 1125-26 (5th Cir. 1993) (determining whether funds debtor spent in failed effort to keep commuter airline out of the red conferred "value" on the debtor)).

Along these lines, the Second Circuit held in Rubin that in indirect benefit cases, the consideration given to the third person must ultimately confer an economic benefit upon the debtor, provided that the value received by the debtor approaches the value of the property transferred by the debtor. Tousa, 444 B.R. at 658 (citing Rubin v. Mfr. Hanover Trust Co., 661 F.2d 979, 991-92 (2d Cir. 1981)).  Likewise, the Third Circuit has held that indirect benefits can confer value for purposes of section 548(a)(2) of the Code  where the court finds evidence of indirect potential or an intangible benefit, even if they are incapable of exact measurement and quantification. See Mellon Bank, N.A. v. Metro Commc'n, Inc., 945 F.2d 635, 646 (3d Cir. 1991), cert. denied, 503 U.S. 937, 112 S. Ct. 1476, 117 L. Ed. 2d 620 (1992); see also In re R.M.L., Inc., 92 F.3d at 151 ("Significantly, the court in Metro Communications, Inc., went on to discover several potential, intangible benefits, that, although incapable of precise measurement, conferred value on Metro despite their failure to materialize.").  Therefore, this Court finds that the "weight of authority supports the view that indirect, intangible, economic benefits, including the opportunity to avoid default, to facilitate the enterprise's rehabilitation, and to avoid bankruptcy, even if it provided to be short lived, may be considered in determining reasonable equivalent value." In re Tousa, Inc, 444 B.R. at 660.

In the case at bar, the record reveals a genuine dispute of fact regarding whether the Debtor Corporation received reasonably equivalent value in exchange for its $61,600.31 transfer to Defendant Barish.  In order for the Court to decide this issue, it must consider the totality of the circumstances surrounding the transaction.  Courts have generally considered three factors

17

when implementing the totality of the circumstances test: "(1) whether the transaction was at arm's length, (2) whether the transferee acted in good faith, and (3) the degree of difference between the fair market value of the assets transferred and the price paid." In re R.M.L., 92 F.3d at 145. In addition to these the factors, the court "must examine all aspects of the transaction to measure carefully the value of the benefits received by the plaintiff." BCPM Liquidating LLC v. PricewaterhouseCoopers LLP (In re BCP Mgmt.), 320 B.R. 265, 280 (Bankr. D. Del. 2005) (citing Mellon Bank, 92 F.3d at 154).

As discussed at length in the prior section of this opinion, the issue before this Court concerns the fact that the Debtor Corporation made payment on the First and Second Notes in the form of $61,600.31 to Defendant Barish, instead of directly to WEB Equities, the holder of the Notes. Therefore, if this Court were to treat Defendant Barish and WEB Equities as separate legal parties, the Court must find that reasonably equivalent value was received by the Debtor Corporation in exchange for its payment to Defendant Barish in order to restrain from avoiding the transfer. Based upon the affidavits submitted and the loan documentation presented, this Court does not have the requisite information to conclude by way of summary judgment that the Debtor Corporation received either a direct or indirect benefit, ergo, "fair consideration," or "reasonably equivalent value" from the Defendant Barish individually and/or Defendant Barish/WEB Equities when it paid $61,600.31 to Defendant Barish before the filing of the Bankruptcy petition. Additionally, the parties have failed to present adequate proofs evidencing whether Defendant Barish and WEB Equities' share a legal form, and if so, how it impacts the potential benefit received by the Debtor Corporation in exchange for the payment made to Defendant Barish.

As a result, the Court hereby Denies summary judgment, without prejudice, as to both parties regarding the Ninth Count of the Adversary Complaint, due to the existence of a genuine dispute of material fact concerning whether the Debtor Corporation received reasonably equivalent value in exchange for the property transferred and obligations incurred.

## IV.    CONCLUSION

For the reasons set forth herein, the Court finds that the Plaintiff/Trustee has failed to present a prima facie case proving the existence of an Avoidable Preferences with respect to Count Ten of the Adversary Complaint or raise a genuine dispute of material fact to preclude dismissal of said claim by way of Summary Judgment.  Plaintiff/Trustee has also failed to present a prima facie case establishing a Fraudulent Conveyance with respect to Count Nine of the Adversary Complaint.  However, Plaintiff/Trustee has raised a genuine dispute of material fact with respect to said claim, precluding dismissal of Count Nine of the Adversary Complaint by way of Defendant's Motion for Summary Judgment.  Therefore, Plaintiff/Trustee's motion for Summary Judgment is hereby denied.  Defendant's motion for Summary Judgment Dismissing Counts Nine and Ten of the Adversary Complaint is hereby granted in part and denied in part, dismissing solely Count Ten of the Adversary Complaint.  Defendant is directed to submit a form of order reflecting the Court's rulings in addition to submitting a scheduling order to be held by the Court under the 7 day rule.

*[signature]*
Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: October 11, 2011